UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JODY KULLING,

    Petitioner,

vs.           Case No. 2:06-cv-640-FtM-36SPC

SECRETARY, DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

## **OPINION AND ORDER**

### **I. Status**

Petitioner Jody Kulling (hereinafter "Petitioner" or "Kulling") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on November 3, 2006.[1] Petitioner challenges his conviction and sentence entered in Lee County, Florida. Petition at 1. Respondent filed a Response (Doc. #16, Response) and supporting exhibits (Docs. #16-1), including Petitioner's post-conviction motions and hearing transcripts. Petitioner filed a Reply (Doc. #21, Reply). This matter is ripe for review.

### **II. Procedural History**

Petitioner was charged by Information with two counts of lewd and lascivious exhibition and two counts of exposure of sexual

---

[1] The Petition (Doc. #1) was docketed and filed with the Court on November 6, 2006; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

organs. Exh. 10 at 38-39. Petitioner proceeded to a jury trial and on April 16, 2004, the jury returned a guilty verdict on all four counts. Id. at 71-72.

Petitioner, through appointed counsel, filed a direct appeal raising two grounds for relief: (1) trial court erred by failing to make proper inquiry before allowing Petitioner to proceed at trial *pro se*; and (2) insufficient evidence that Petitioner committed counts two, three, and four. Exhs. 1-2. The State filed an answer brief in response. Exh. 3. The appellate court *per curiam* affirmed Petitioner's conviction. Exh. 4.

Petitioner, proceeding *pro se*, then filed a state petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. Exh. 6. The State filed a response pursuant to the court's order. Exh. 7. The appellate court denied the petition. Exh. 8; Kulling v. Crosby, 928 So. 2d 1228 (2d DCA 2006).

Petitioner initiated this action by filing a timely[2] Petition alleging the following three grounds for relief: (1) trial court erred by failing to conduct a proper inquiry before allowing Petitioner to proceed *pro se* at trial; (2) sufficiency of the evidence; and (3) ineffective assistance of appellate counsel. Petition at 5-8.

---

[2]The AEDPA imposes a one-year statute of limitations on § 2254 actions. 28 U.S.C. § 2244(d). Respondent does not address the timeliness of the Petition. See Response. The Court independently finds the petition is not time barred.

## III. Applicable § 2254 Law

The Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

A federal court may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

Where a petitioner's claim raises a federal question that was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of Corrections, 278 F.3d 1245, 1253-54 (11th Cir. 2002). See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law." Wright v. Van Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of §

2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. Brown, 544 U.S. at 141; Mitchell, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted);

-5-

Mitchell, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review *de novo*; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. Id. at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. Rice v. Collins, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the

presumption does not apply and such claims are reviewed *de novo*. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006). Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).

## IV. Analysis

This Court has carefully reviewed the record and concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

**Ground One**

Petitioner claims that the trial court did not conduct a proper inquiry before allowing him to proceed *pro se* at trial. Petition at 5. Petitioner argues that his case should be remanded for a new trial. Id. In Response, Respondent submits that the allegations concerning the trial judge's inquiry raise an issue of only state law and are not cognizable in the instant federal habeas petition. Response at 6. Turning to the merits of the claim,

Respondent argues that the transcript establishes that Petitioner understood the ramifications of proceeding *pro se* and knowingly and voluntarily waived the assistance of defense counsel. Id. at 11.

In Faretta, the United States Supreme Court held:

> [A]lthough a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

Faretta v. California, 422 U.S. 806, 835 (1975). The purpose of a Faretta hearing is to determine whether a defendant's decision to represent himself is voluntary and intelligent. See generally Id. The Eleventh Circuit Court of Appeals "has interpreted the Supreme Court's language to mean that ideally a trial court should hold a hearing to advise a criminal defendant on the dangers of proceeding *pro se* and make an explicit finding that he has chosen to represent himself with adequate knowledge of the possible consequences." Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065 (11th Cir. 1986). The failure to do so, however, is not error as a matter of law. If the trial record shows that a defendant knowingly and voluntarily elected to represent himself, the Faretta standard will be satisfied. Nelson v. Alabama, 292 F.3d 1291, 1296 (11th Cir. 2002); Fitzpatrick, 800 F.2d at 1064(stating "while [a] waiver hearing expressly addressing the disadvantages of a *pro se* defense is much to be preferred, it is not absolutely necessary. The

ultimate test is not the trial court's express advice, but rather the defendant's understanding."). Further, the Eleventh Circuit Court of Appeals "has held repeatedly that an individual does not have a right to hybrid representation. . . . . Rather, the decision to permit a defendant to proceed as co-counsel rests in the sound discretion of the trial court." Cross v. U.S., 893 F.2d 1287, 1291-92 (11th Cir. 1990)(citations omitted).

On direct appeal, Petitioner raised the claim that the trial judge did not conduct a proper Faretta inquiry. Exh. 2. The State filed an answer brief. Exh. 3. Upon reviewing the appellate and answer briefs, the appellate court *per curiam* affirmed Petitioner's conviction and sentence. Exh. 4.

The record of the proceedings establish that prior to the date of trial when Petitioner met with his defense counsel, Mr. Miskovich, Petitioner told him that he wanted to proceed *pro se*. Exh. 10 at 5. Defense counsel later presented Petitioner's request to the trial court. The following colloquy took place between the trial court and Petitioner:

> THE COURT: . . . I need to ask you several questions, sir. What particularly are you dissatisfied with what your lawyer has done?
>
> MR. KULLING: Dissatisfied with what my lawyer [sic] done?
>
> THE COURT: Yes.
>
> MR. KULLING: Well, there- it's kind of a lack of study in the case.
>
> THE COURT: What do you mean by lack of study?

-9-

MR. KULLING: I've been incarcerated for seven months, going over things with a fine-tooth comb, that I'm finding that I believe [sic] could have been brought to the court's attention for motions and things like that, that could have maybe squashed other issues that weren't brought forward. And I can't do them without the Florida Bar Association. And I have tried to do things on my own and they were not awarded to me. And that kind of undermines my confidence when I don't have somebody backing me on that. So I'm fully qualified for-

THE COURT: What's your educational background?

MR. KULLING: Educational background? Completed high school.

THE COURT: Okay. What's your connection- how much experience have you had with the criminal court?

MR. KULLING: Um, I've been though two criminal court trials, right here in this courtroom, in Lee County, in the last couple years, unfortunately. But there was a couple misdemeanors before that.

And I've studied. I've been back in the dorm. I get the case law books and I read through them and get a lot of information and a lot of knowledge.

THE COURT: You understand that a lawyer's got seven years of education? This lady over here's job is to put you in prison.

MR. KULLING: Yeah.

THE COURT: She knows all the rules. She is a very experienced prosecutor. She knows all the tricks. And if you represent yourself, I cannot help you in the least bit. I can't make objections for you, and if you don't make them they're waived.

MR. KULLING: I'm fully aware of that, Judge Gerald.

THE COURT: You understand that and you think you can do it?

MR. KULLING: Yes.

THE COURT: He can't do part of it and you can't do part of it.

MR. KULLING: I'm fully aware of that.

THE COURT: And you are willing to undertake that?

MR. KULLING: Yes, I am.

THE COURT:  All right [].

THE COURT: All right, Mr. Kulling, if you want to do this. Although, you know, I have never known any defendant, in any of the cases that's been done, do nearly as well as they thought.  But you may be an exception in the history of the business.  So that's your choice.  I will let you represent you.  I will appoint you standby counsel, and you can do that but you can't participate.

MR. MISKOVICH: Sit at the table here?

THE COURT: Yeah, you can sit at the table.

MR. MISKOVICH: Just so you know, Judge, he had one trial in which he was convicted with me; went up on appeal; came back for a new trial.  I went to trial with him on the new one, he was acquitted.  I have gone through his two trials.  And, in my talking with him, he thinks because he sat there seven months, he's been able to have more time to go through his case in more detail than I have and so, for that reason, he feels he wants to go and act for himself instead of me.  I just want to make that clear.

THE COURT: And for 35 years I'm amazed with that [sic] people that do that.

MS. CATHERS: Would the Court be willing to inquire of Mr. Kulling as to mental health history or exposure to any intoxicants or drugs?

THE COURT: Are you presently having any problems with intoxicants or anything?

MR. KULLING: No, Your Honor.

THE COURT: Have you ever had any mental health problems?

MR. KULLING: No, Your Honor.

. . . . .

MR. KULLING: I am fully prepared, Your Honor, today for trial. Id. at 5-8, 9-10.

The Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application of clearly established federal law. The State courts' decisions were not based on an unreasonable determination of the facts in light of evidence. The record of the State proceedings clearly establishes that Petitioner knowingly and voluntarily requested that the court permit him to proceed *pro se*. When the trial judge questioned Petitioner on the matter, Petitioner adamantly asserted that he spent seven months in jail reviewing his case and the case law. Petitioner stated on the record that he thought he was more prepared than defense counsel to proceed at trial. The trial judge repeatedly cautioned Petitioner about proceeding *pro se*, but Petitioner maintained his desire to represent himself. The trial court made a specific finding that Petitioner chose to represent himself with knowledge of the consequences and at its discretion directed that defense counsel sit "second chair." While the trial court did not specifically advise Petitioner of <u>all</u> of the disadvantages to proceeding *pro se*, the trial court did explain certain disadvantages to Petitioner. The United States Constitution does not require any particular form of advice. <u>Iowa v. Tovar</u>, 541 U.S. 77 (2004). Moreover, in this case Petitioner was familiar with court proceedings. Petitioner

did not object to having the assistance of "co-counsel." Based on the foregoing, the Court denies Petitioner relief on ground one.

**Ground Two**

Petitioner challenges the sufficiency of the evidence on counts two, three, and four, and refers the Court to his exhibit A that he attached to the Petition, which is a copy of his appellate brief on direct appeal with notes he appears to have handwritten on the brief. Petition at 6. Petitioner argues that "the State's evidence is not inconsistent with Kulling's reasonable hypothesis of evidence, that incidents involved another person and/or were inadvertent acts lacking any criminal intent." Id. In Response, Respondent argues that the State presented sufficient evidence and reviews pertinent evidence elicited during the trial. Response at 14-22.

In Jackson v. Virginia, the United States Supreme Court held that, when reviewing the sufficiency of the evidence, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. 307, 318-319 (1979) (emphasis in original). It was within the province of the jury to weigh the credibility of all of the witnesses' testimony. Id. at 318-319.

Petitioner raised this sufficiency of the evidence claim on direct appeal. Exh. 2. The State filed an answer brief. Exh. 3.

The appellate court *per curiam* affirmed the State court's conviction and sentence. Exh. 5. Counts one and two charged Petitioner with lewd and lascivious exhibition to a person less than 16 years of age in violation of Florida Statute § 800.04(7)(a),(c), and counts three and four charged Petitioner with two counts of exposure of a sexual organ in violation of Florida Statute § 800.03. Thus, the State had to prove that Petitioner did, in the presence of a person 16 years of age or less, intentionally masturbate, intentionally expose the genitals in a lewd or lascivious manner, or intentionally commit another sexual act that did not involve actual physical or sexual contact with the child herself. The State also had to prove that Petitioner did unlawfully expose or exhibit his sexual organ to persons in a public place or on the private premises of another, or so near thereto as to be seen from such private premises, in a vulgar or indecent manner, or did go naked in public.

The record supports the trial judge's decision to deny Petitioner's motion for acquittal and supports the jury's finding of guilt on all charges. See Response at 15-21. In particular, as Respondent points out:

> All of the victims witnessed the incidents around the same time, which correlated with when the children would be walking to or from the elementary school or when the mothers would be driving to or from the elementary school. C.S.G., Mr. Lucky, and Ms. Castro testified that they saw a man masturbating in the window of the suspect house on the afternoon of September 26, 2003. L.S.G., Detective Fisher and Detective Estep witnessed the same

>incident on the afternoon of September 26. L.S.G. and the detectives identified the masturbating man as Petitioner. The detectives videotaped and photographed Petitioner masturbating in the window. Further, Ms. Cook identified the masturbating man's penis as large, and not only did Detective Fisher testify that the masturbating man was Petitioner, but that Petitioner's penis was larger than average.

Response at 21.

This Court need not review all of the evidence presented at trial. Based on the record, it is clear that *any* rational trier of fact could have reached the conclusion that the jury in this case reached. Petitioner has not shown that the outcome in his case was contrary to, or involved an unreasonable application of, clearly established federal law, or that the ruling was based on an unreasonable determination of facts in light of the evidence. Petitioner is not entitled to relief on this claim.

**Ground Three**

Petitioner argues that appellate counsel rendered ineffective assistance by failing to raise a claim concerning the trial court's admission of "the Williams[3] rule evidence" on direct appeal. Petition at 8. In support of his claim, Petitioner refers the Court to his exhibit B, which is a copy of Petitioner's petition for habeas relief filed in the state court. In the state petition, Petitioner points out that he objected to the admission of testimony regarding similar actions committed by Petitioner between

---

[3] Williams v. State, 110 So. 2d 654 (Fla. 1959).

September 8, 2003, through September 26, 2003. Exh. 6 at 3. In Response, Respondent submits that the trial court permitted the State to introduce the collateral crimes evidence in this case to show either method, opportunity, motive, lack of accident or propensity. Response at 24 (citing <u>Corner v. State</u>, 31 Fla. L. Weekly D92 (Fla. 3d DCA 2005)). Respondent submits that the trial court did not allow the State to use the evidence to establish identity. Response at 24. Additionally, Respondent argues that "some of the collateral evidence was strikingly similar," and, therefore, met the "fingerprint standard" for admissibility. <u>Id.</u> (citing <u>Kulling v. State</u>, 871 So. 2d 311 (Fla. 2d DCA 2002); <u>State v. Richman</u>, 861 So. 2d 1195 (Fla. 2d DCA 2003)). Thus, Respondent argues that the trial court properly admitted the evidence and appellate counsel's decision not to raise this claim on direct appeal does not constitute ineffective assistance of appellate counsel because the claim lacked merit. <u>See</u> <u>Id.</u> at 22-26.

The standard for evaluating whether appellate counsel provided ineffective assistance is essentially the same as the <u>Strickland</u> standard used to evaluate whether trial counsel rendered ineffective assistance. <u>See</u> <u>Shere v. Sec'y Dep't Corrections</u>, 537 F.3d 1304 (11th Cir. 2008)(citations omitted). The test for establishing appellate counsel's ineffectiveness is: (1) deficient performance; and (2) but for appellate counsel's deficient performance, petitioner would have prevailed on appeal. <u>Id.</u> at

1310.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006).  A Court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)(quoting Strickland, 466 U.S. at 690).  This judicial scrutiny is "highly deferential."  Id.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689-90.  A post-conviction petitioner cannot prevail on a claim of ineffective assistance of appellate counsel if a legal issue would in all probability have been found to be without merit had counsel raised the issue on direct appeal.  Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001).

As Petitioner noted in his Petition, he raised this claim concerning appellate counsel's ineffectiveness in his state petition for writ of habeas corpus.  Exh. 6.  The State filed a response.  Exh. 7.  The appellate court denied Petitioner's state petition for relief on this claim.  Exh. 8.  The fact that the appellate court did not write "an opinion that explains the state court's rationale," does not detract from the deference owed to

that court's decision.  Wright v. Sec'y Dept' of Corrections, 278 F.3d 1245, 1255 (11th Cir. 2002).

The record shows that Petitioner repeatedly objected during trial, citing the Williams rule, when the State would ask officers about prior acts Petitioner committed while the officers conducted surveillance of his home.  See Exh. 10, Vol. II.  The trial court, in fact, excluded some of the collateral acts evidence where the particular witness could not identify Petitioner.  Exh. 10, Vol. II at 203. Indeed, appellate counsel did not raise this collateral acts evidence claim on direct appeal.  Exh. 2.  Nevertheless, the record does not support a finding that appellate counsel's failure to do so was deficient under the Strickland standard.  Petitioner does not establish that "no competent counsel would have taken the action that his counsel did take." See Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001).  In particular, the appellate court reviewed this very claim in Petitioner's state petition for habeas corpus relief and denied him relief.  Appellate counsel does not have a duty to raise every non-frivolous, colorable claim on appeal, but instead, should "winnow[] out weaker arguments . . . and focus[] on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745 (1983).  In Florida, a trial court has broad discretion regarding the admissibility of evidence, and on appeal, the trial court's evidentiary rulings are subject to an abuse of discretion standard of review. Chandler v.

State, 702 So. 2d 186, 195 (Fla. 1997). Thus, appellate counsel was within the realm of reasonable, professional judgment in assessing the viable claims for appeal and raising only those claims that counsel believed deserved attention. The State courts' decisions were neither contrary to, nor an unreasonable application of federal law, and were not an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to relief on this claim.

ACCORDINGLY, it is hereby **ORDERED**:

1. The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**.

2. The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this 2nd day of April, 2010.

Charlene Edwards Honeywell
United States District Judge

SA: alj

Copies: All Parties of Record